## C. T. INVESTMENT CO v CLEVELAND TRUST CO, et

Common Pleas Court, Cuyahoga Co

Decided March 10, 1939

Davies & Eshner, Cleveland, for plaintiffs.

Morgan, Landfear & Baskin, Cleveland for defendant, the Village of South Euclid.

Frank T. Cullitan, County Prosecutor, Cleveland, and Ralph Edwards, Asst. County Prosecutor, Cleveland, for defendant John J. Boyle, County Treasurer of Cuyahoga County.

R. O. Carver, Esq., Cleveland, for defendants, R. O. Carver, et.

## OPINION

By KRAMER, J.

This case is submitted upon an agreed statement of facts. The conclusion of facts made by the court appears in its findings herein.

Fundamental to a discussion of the issues here made, it appears that there can be no question that ▮▮▮▮▮ by reason of the failure of the village to comply with §8572-56, GC, the registered land herein involved is not liable for the assessments levied thereon by the village. Curry v Lybarger, 133 Oh St 55, 10 OO 61. It should also be noted that the Torrens certificate of registration shows the mortgage of the plaintiff to be the first and best lien against this property.

Notwithstanding that its assessments are invalid and do not constitute a lien upon the land, and that they do not appear upon the Torrens certificate, the village claims that it should be found to have a lien for such assessments and that such lien should be declared prior to the plaintiff's mortgage. This claim is based upon the following facts which the court considers to be established:

1. That the improvements were installed and assessments levied prior to the attaching of plaintiff's mortgage.

2. That the lands of this subdivision were subject to a uniform plan of restrictions and reservations which had been adopted prior to plaintiff's mortgage.

3. That one of the reservations contained in the uniform plan of restrictions and reversations adopted for this subdivision reserves to the original owners the right to petition for improvements and binds the grantees of the land and the land itself for the payment for such improvements.

4. The improvements installed were petitioned for by the original owners and such petitioners expressly agreed to pay for the improvements and waived notices and irregularities.

5. That the plaintiff had full knowledge of the existence of this uniform plan, of the restrictions and reservations contained therein; of the lots affected thereby and of the proceedings relating to the installation of the improvements.

The contention of the village is:

1. That the plaintiff is bound by the restrictions of the uniform plan and that it took its mortgage subject to the restrictions and reservations thereof.

2. That this proposition is not affected by that provision of the Torrens law which provides that one taking registered land " * * * shall hold the same free from all estates and encumbrances except those noted upon the certificate * * *", §8572-25. GC, and shall not "be affected with notice, actual or constructive, of any unregistered trust, lien * * *." (§8572-31, GC).

This argument is based upon the proposition that the reservations of

the uniform plan are easements appurtenant to the land and are excepted from §§8572-25 and 8572-31 by subsection 6 of §8572-25, which excepts easements from registration.

In respect to unregistered property the court agrees with the contention first made by the village and deems it established and supported by the authorities cited by counsel. It is unable, however, to find any bearing of this law upon the issue herein. █ The village has no valid lien upon the property (Curry v Lybarger, supra). If there is no lien, knowledge of the plaintiff of all the facts, with a resultant finding that its mortgage would be subject to all restrictions and reservations of which it had knowledge could not operate to create a lien.

The argument of counsel for the village in this connection appears to rest upon the statement of his brief, that:

"In the case of **Laurel Hill Land Co. v Collister,** 43 Oh Ap 229, it was held that special assessments not filed with the county recorder as required by §8572-56, GC (since repealed August 18, 1937) were, nevertheless, held first liens on the registered property of the Belvoir Gardens Subdivision which were levied thereon for cost of improvements petitioned for by the original owners of said subdivision under the reservations set forth in the general plan of restriction adopted for said subdivision.

"Therefore, it follows from this decision that since the mortgage lands are bound by the uniform plan of restrictions and reservations adopted for Belvoir Gardens Subdivision, the special assessments of the village of South Euclid which were levied on the mortgaged land in said subdivision for improvements for which petitions were filed by the original owners of said subdivision, although not filed with the county recorder as required by then existing §8572-56, GC are nevertheless valid and first liens on said sublots."

The court finds no holding in the Laurel Hill Land case that the assessments thereon constitute a lien. On the contrary it holds that there is no lien. The decision is based squarely and only upon the doctrine of estoppel. This could not be more clearly indicated than by the statement of the court on page 233 that:

"Were the doctrine of estoppel not invoked as set forth in this amended answer, the court would without hesitation grant the relief prayed for in the petition and would hold that this section means what is says. It is to be avoided, if at all, by the conduct of the plaintiff."

The court appears to do what the counsel for plaintiff repeatedly insists cannot be done, namely to create a lien by estoppel. The decision, however, is that, while there is no lien, plaintiffs are estopped from so asserting.

Considering the second proposition of counsel, the first question that it is necessary to determine is whether the restriction, here in question, constitutes an easement, and is therefore effective upon the plaintiff notwithstanding that it is not registered.

The court has given considerable time and study endeavoring to determine this question. That the violations of building restrictions under a uniform plan may be enjoined is settled law. The decisions are uniform and many to the effect that where one takes title to a lot with notice, actual or constructive, of an agreement between his grantor and the original owner establishing building restrictions, and such restrictions are uniform in a subdivision, that it would be unconscientious and inequitable to permit a violation of this agreement which would destroy the plan and depreciate the value of the property. The remedy is granted upon a rule purely equitable.

The courts properly say that it makes no difference in granting this equitable remedy whether the restrictions are considered personal covenants or appurtenances running with the land, Whitney v Union, 11 Gray; 77 (Mass.)

359. The courts speak of thees covenants as creating a right (in the nature of a reservation or easement). **Dixon v Van Sweringen, 121 Oh St 56, at page 71.** They are variously designated as negative easements. **Guardian Savings & Trust Co. v Beyar, 20 O.N.P. (N.S.) 417, at 423;** "Equitable Easements," **Schubert v The Eastman Realty Co., 10 O. C. C.** "In the Nature of Reciprocal Negative Easements," Allen v City of Detroit, 167 Mich., 464.

None of these cases present any answer to the question whether building restrictions constitute a real easement, that is an interest in land, or property right. This question was presented to our Supreme Court three times, in the cases arising out of the building of the so-called Belt Line Railroad. The Belt Line had purchased a right of way in East Cleveland, by acquiring lots which were part of a subdivision, restricted among other things to use for residence purposes only. An injunction was sought upon the ground that the other lot owners in the subdivision had a property right or easement in the lots purchased, which the railroad had not acquired either by purchase or appropriation. The defense was, first, that the plaintiffs had no property right in the land taken, and second that they were guilty of laches. The injunction was granted in the Common Pleas Court, affirmed in the Circuit Court. The Supreme Court reversed the lower courts and refused the injunction. **Cleveland Shore Line Railroad v Duncan et, 84 Oh St 463.** The Supreme Court wrote only a memorandum, which was not sufficiently clear to permit it to be said definitely whether the decision was based upon the defense of laches, or whether the court had held that the plaintiffs had no property right in the railroad company's lots.

A new action was therefore begun for injunction, the plaintiffs being J. Frank Masters, and Van Etten. The Common Pleas Court (Judge Lawrence) refused the injunction, interpreting the decision of the Supreme Court to be that the plaintiffs in the Duncan case were guilty of laches and holding that the instant plaintiffs were also guilty of laches.

The Circuit Court said:

"While still believing, as a lawyer, that the rights of the plaintiffs amount to an interest or easement in the lots purchased by the railroad company to be used as part of the right-of-way as expressed in §11039, GC, yet as a judge in obedience of the law as announced by the Supreme Court, I bow to its conclusion necessarily deduced from said decision, as I believe that plaintiffs had no such interest in said premises as require an appropriation thereof before the railroad company can construct its railroad thereon."

The Masters and Van Etten cases were taken to the Supreme Court, where the decision of the Circuit Court was affirmed, expressly upon the authority of the Duncan case, without further opinion.

Action was then brought for damages. A demurrer to the petition was sustained on the ground that the Supreme Court had held that the plaintiffs had no easement or property right in the railroad lots (Kramer, J.). This decision was affirmed in the Circuit Court and in the Supreme Court. **Doan v The Cleveland Short Line Ry. Co., 92 Oh St 461.**

The opinion in that case still leaves the question undetermined. It holds that restrictive covenants in the nature of building restrictions do not create a property right, for which compensation must be made, if taken by any agency of the government having the power of eminent domain.

It may, the court believes, be properly deduced from this holding that building restrictions do not constitute a real easement. If the plaintiffs did possess an easement or property right in the lots which were taken by the railroad, certainly such taking would have been within the constitutional provisions which required compensation therefor. This deduction is supported by the case of the United

States v Certain Lands, 112 Fed. Rep. 622, upon which the court relies in the Doan case (page 469).

The court in the Certain Lands case first makes a distinction between building restrictions in general and those restrictions which would seem to fall under the common law definition of easements as we know it. The court says, page 626:

"Were we dealing with a condition of a different character, such as a building restriction pertinent to the claimant's estates, whereby their value was greatly enhanced through the fact that light and air could not be cut off or perhaps a fine prospect destroyed, a different question would be presented."

The claimant it appears had the grant of a right-of-way over one of the parcels in this allotment, which parcel was taken by the government. The court says, (page 630) that this right of way constituted "an actual easement" and a property right for the taking of which the claimant was entitled to compensation.

However, such an authority as Jones on Easements, Sec. 110, et seq., says that a restrictive covenant is in effect the grant of an easement.

The same statement is found in other texts and digests. To decide this question,—which is whether a building restriction creating a uniform plan in an allotment is an easement under §8572-25-(6) would require considerable further investigation and study by the court. This would only delay decision and does not seem warranted, because the court considers that the decision of this question would not be determinative of the instant case.

The reason for this is that we are not here concerned with a building restriction of the type that appears in any of the reported cases. The covenant herein is one granting or reserving to the original grantor the right to petition for improvements. There seems to be neither principal nor authority to bring this covenant within any definition of an easement, legal or equitable. This is the grant of a power or agency; it is incidental to the use of the land but does not directly affect its use in any manner. It lacks the essential element of an easement in that there is created no dominant and servient estates. A dominant estate might be found in the land of the grantor so long as he retains land in the allotment. But where can it be found when he has divested himself of all his land? Not in the other land owners as in the case of building restrictions. It appears that it is personal to the grantor and does not pertain to his land. It therefore can not constitute an easement. Again there is no suggestion anywhere in the books that anyone other than the owner of land can assert any right arising out of an easement created by a building restriction.

If it be assumed that the restriction herein does create an easement and that the rights of the parties are to be determined as if the entire proceedings in relation to the land were part of the Torrens record, the question is then presented whether the plaintiff is estopped from claiming the benefit or protection afforded by §8572-56, GC. The village maintaining that the plaintiff is so estopped relies upon the case of the Laurel Hill Land Company, supra.

In that case:

" * * * the village of South Euclid filed an amended and supplemental answer in which it pleaded estoppel in this, to-wit: That the conveyance and Torrens certificate of title by which the plaintiff secured title, contains specific provisions that the same were subject to certain conditions, reservations and stipulations which were made by the former owners of the real estate and predecessors in title of the plaintiff; that said assessments had been made on the basis of the petitions in writing signed by the owner of said lands being the parties named in said reservations as the original owner; and that the plaintiff had executed a mortgage warranting the title except as to these reservations and restrictions." (Page 231).

At page 233 the court says:

"It will be noted that the amended answer pleads estoppel as against the plaintiff by virtue of a deed and contract and to determine whether this is true reference must be made to the documentary evidence offered in this court."

The court then discusses the mortgage and deed, and says, (page 235):

"Counsel for plaintiff also invokes §8572-31, GC which is to the effect that a person taking a transfer of registered lands is not held to inquire into the consideration of previous owners and shall not be affected with notice of liens, etc."

"That section is not available if the doctrine of estoppel is effectively invoked any more than are the provisions of §8572-56.

"It is the opinion of this court that the plaintiff can not rely upon the provisions of this act when it had impliedly waived reliance thereon. It accepted the deed which contained these restrictions, and which excepted assessments from the warranty. It gave a mortgage on the property and from its warranty it also made a similar exception.

"With propriety counsel for the village cites the case of Dotan v Bartlett, 107 Me. 351, which holds that a grantee is estopped to deny the validity of an assessment recited in his deed and especially is he estopped when he himself makes a mortgage and repeats the same recital as an exception to the title.

"Here the evidence of plaintiff's title showed clearly the reservation in the grantor of the right to secure these improvements and to bind the land and the plaintiff was specifically bound to assume the assessments. Here is a specific agreement, the effort of which the plaintiff will not be permitted to escape. Here is a clear case of estoppel by deed and by contract and estoppel by the express act of the plaintiff itself. The previous owner of the land reserved the right to institute these improvements and to bind the land for them.

The previous owner filed the petition and the village made the improvement.

"Under these circumstances the plaintiff cannot in our judgment escape liability for the assessments. * * * "

The holding in this case is squarely premised upon the facts set up in the answer of the village of South Euclid. The estoppel is "by deed and by contract and * * * by the express act of the plaintiff itself."

In the instant case the only facts appearing which are also in the Laurel Hill case are the covenant in the deed and the filing of the petitions. If upon the basis of the sentence or two in the opinion relied upon by the village it were held that these facts alone created an estoppel, then apparently any lien created by the owner would be effective against a subsequent purchaser with knowledge. Such an interpretation would work a substantial repeal of the Torrens Act; would be manifestly contrary to the express provisions of that act and is quite untenable.

Considering the contention of the village based upon (1) the statute of limitations, (2) in relation to the lighting assessments, and (3) in relation to the assessments which were a lien upon this property prior to its Torrenization:

(1) This court has already determined that the statute of limitations does not run against assessments which are invalid as against Torrenized land. Broad Columbus Corporation v John Boyle, Treasurer, et al, 11 OO 480.

(2) There appears to be no ground upon which lighting assessments would be excepted from the operation of the Torrens Act to any greater degree than assessments levied for other purposes.

(3) It appears that when this land was registered the village was properly served and no lien was found which became a matter of record on the Torrenized certificate. Such lien could not, therefore, be now asserted.

The right of the plaintiff to have a decree of foreclosure is challenged by reason of a certain trust agreement with the Cleveland Trust Company in relation to this property. The defendant

village prays that the plaintiff be estopped from bringing foreclosure on its mortgage as in violation of said trust agreement and be required to exhaust the security held by it and to permit the trustee to collect the balance due on certain land contracts and purchase money mortgages which it has for collection, and apply such proceeds collected to taxes and assessments and to plaintiff's mortgage before resorting to foreclosure.

The defendant Carver asks for an accounting,—"for the additional mortgages held by it * * * and * * * for the * * * disposition made of said land contracts held by the Cleveland Trust Company." and claims that this pleading raises the issue of the right of the plaintiff to foreclose by reason of the existence of the trust agreement with the Cleveland Trust Company.

The court considers the questions presented in the Carver brief are before the court only by the pleadings of the village and are not raised by the pleadings of the defendant Carver.

If the village has no lien as the court has held, then it would have no interest in the property affected by this law suit which would entitle it to question the right of the plaintiff to foreclose upon its mortgage. Therefore the issue would not be before the court and could be disposed of upon that ground.

However, having considered the briefs filed the court will note briefly its conclusions.

The court is compelled to hold that the C. T. Investment Company and the Cleveland Trust Company are separate and distinct corporations North v Higbee Co., 131 Oh St 507, 6 OO 166. The trust agreement can then be considered only additional or collateral security for the mortgage. Such security does not affect plaintiff's right to pursue its remedy upon the principal note and mortgage, 27 O. Jur. §265; Union Trust Co. v Simon, 126 Oh St 346.

If it be assumed either upon the theory of identity of the corporations the Cleveland Trust Company and plaintiff, or upon the particular facts herein, that the plaintiff is bound by the provisions of the trust agreement to the same extent as if it were a party thereto, then it is claimed by the defendants that the mortgage cannot be foreclosed until the plaintiff shows that it has exercised reasonable diligence to satisfy the indebtedness from the trust res.

It is claimed that there is sufficient moneys due upon the mortgages and land contracts held by the trustee to satisfy the indebtedness secured by the principal mortgage. The trust agreement provides that the trustee shall collect the payments upon these contracts and mortgages. The court agrees with defendants that the trustee was bound to exercise due diligence to make such collections, but does not agree with defendant's contentions that this trust agreement works a condition into the mortgage to the effect that the mortgage shall not be deemed in default nor collected when due, until the trustee has exhausted an alleged obligation to secure from the contracts and mortgages sufficient moneys to meet the mortgage requirements. This contention first, interpolates a condition into the mortgage contract which such contract does not contain, and, second, imposes an obligation upon the trustee to enforce collection of the mortgages and contracts, which it is not empowered to do under the trust agreement.

The court is of the opinion that upon the submitted facts, it does not appear that the plaintiff has failed to perform any obligation precedent to its cause of action herein.

It is urged that it is inequitable to permit plaintiff to retain control of the property and of the right to collect any moneys arising therefrom and at the same time to prosecute foreclosure upon its mortgage; that it thereby by its failure to collect permits a default of payment upon the mortgage and then by reason of its own failure is permitted to prosecute an action which will deprive defendant of his equity in the property, and permits plaintiff to acquire title thereto. If the defendant considered that there were moneys collectible, which it was the duty of the

trustee to collect and that such trustee had failed to perform its duty, defendant has had some six years to demand such performance, or to procure a modification of the trust agreement, giving the defendant the right to proceed to enforce such payments, upon the theory that it does not have such right, or to remove the trustee for neglect to perform its trust duties.

The fact that there is no evidence of any action having been taken on the part of the defendants in complaint against the trustee, and that there is no evidence now that any of the accruals or indebtedness upon the contracts and mortgages are collectible, tends to induce the belief that the equity claimed is probably more academic than existent.

The conclusion of the court is that the plaintiff is entitled to a decree of foreclosure in accordance with the prayer of its petition.